# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 ERICA L. HURTS**
**United States Army, Appellant**

ARMY 20120301

Headquarters, Fort Bliss
David H. Robertson, Military Judge
Colonel Francis P. King, Staff Judge Advocate

For Appellant: Captain Robert N. Michaels, JA (argued); Lieutenant Colonel
Jonathan F. Potter, JA; Captain A. Jason Nef, JA; Captain Robert N. Michaels, JA
(on brief).

For Appellee: Captain Sean P. Fitzgibbon, JA (argued); Colonel John P. Carrell, JA;
Lieutenant Colonel James L. Varley, JA; Major Elisabeth A. Claus, JA; Captain Sean
P. Fitzgibbon, JA (on brief).

2 May 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant,
contrary to her pleas, of six specifications of willfully disobeying a superior
commissioned officer and six specifications of assault with a means likely to
produce death or grievous bodily harm, in violation of Articles 90 and 128, Uniform
Code of Military Justice, 10 U.S.C. §§ 890, 928 (2006) [hereinafter UCMJ].  The
convening authority approved the adjudged sentence of a bad-conduct discharge and
confinement for three years.[1]

Appellant's case is now before this court for review pursuant to Article 66,
UCMJ.  One of appellant's five assignments of error has partial merit.  In particular,
the evidence is factually insufficient to sustain one of appellant's convictions for

---

[1] The convening authority also credited appellant with 263 days of confinement
credit against the sentence to confinement.

assault with a means likely to produce death or grievous bodily harm (Specification 3 of re-numbered Additional Charge IV).

In early June 2010, appellant learned that she was HIV-positive. An expert witness for the government, Dr. Mody, testified that she began treating appellant in July 2011. In doing so, she reviewed appellant's medical history, including appellant's viral loads prior to that time. Dr. Mody stated that the risk of infection for female-to-male HIV transmission during sexual intercourse is 5 in 10,000 (*i.e.*, .05%) and that using condoms consistently and appropriately further reduced the risk of transmission by approximately 87%. Dr. Mody also testified that appellant had an undetectable viral load during the summer of 2011. She testified that an undetectable viral load means that the virus is suppressed in terms of replication, which has implications for one's infectivity to others. She also testified that if the viral load is suppressed, then the risk of transmission is decreased. Dr. Mody further testified under cross-examination that, in the context of vaginal intercourse and oral sex, the risk of transmission with an undetectable viral load, using a latex condom with no breakage, was remote.

All but one of appellant's victims engaged in sexual activity – including sexual intercourse – with appellant either when she had a detectable viral load, without using a condom, or both. One victim, Private First Class (PFC) PM, testified that he had sexual intercourse with appellant between five and ten times during the summer of 2011, a time period when appellant's viral load was undetectable. Private First Class PM testified that he used a latex condom every time they engaged in sexual intercourse and that he never noticed any defects or other issues with the condom.

Article 66(c), UCMJ, requires this court to conduct a de novo review of the factual sufficiency of the case. *See United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). The review "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). This court "applies neither a presumption of innocence nor a presumption of guilt," but "must make its own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Id.*

Article 128(b), UCMJ, provides in relevant part: "Any person subject to this chapter—(1) commits an assault with a dangerous weapon or a means or force likely to produce death or grievous bodily harm . . . is guilty of aggravated assault . . . ." The predecessor to our superior court has expressly stated that the term "'likely' in the phrase 'likely to produce death or grievous bodily harm'" does not involve "nice calculations of statistical probability." *United States v. Joseph*, 37 M.J. 392, 396

2

(C.M.A. 1993).  "[T]he question is not the statistical probability of HIV invading the victim's body, but rather the likelihood of the virus causing death or [grievous] bodily harm *if* it invades the victim's body.  The probability of infection need only be '*more than merely a fanciful, speculative, or remote possibility*.'"  *Id.* at 397 (citing *United States v. Johnson*, 30 M.J. 53, 57 (C.M.A. 1990)) (emphasis added). Moreover, "[w]here the magnitude of harm is great, there may be an aggravated assault, even though the risk of harm is statistically low."  *United States v. Dacus*, 66 M.J. 235, 240 (C.A.A.F. 2008) (quoting *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998)).[2]

In this case, the unrebutted testimony of the government's expert witness was that appellant's risk of transmitting HIV through sexual intercourse while using a functioning latex condom was remote during the summer of 2011.  This evidence, combined with PFC PM's testimony that he always used a condom and never noticed any defects with those condoms, raises reasonable doubt that appellant assaulted PFC PM with "a means likely to produce death or grievous bodily harm."[3]  Put another way, the evidence does not establish beyond a reasonable doubt that the probability of infection was more than a remote possibility.  Accordingly, we only affirm an assault consummated by battery.  *See* UMCJ arts. 59(b), 79.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case, and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).  Although appellant now faces forty-five and a half years confinement instead of forty-eight years, the aggravation evidence before the sentencing authority has not changed.  Furthermore, a military judge sentenced appellant.  Finally, we have sufficient experience and familiarity with the remaining offenses to reliably determine what sentence would have been imposed at trial.  We are convinced that even if no error occurred at trial, appellant's sentence would have been at least of a certain magnitude.  *See Sales*, 22 M.J. at 307.

---

[2] The question of factual sufficiency here is distinct from the issue in *Dacus*, which addressed the providence of appellant's guilty pleas.  Our factual sufficiency review here is also distinct from the legal sufficiency review in *Joseph*.  Further distinguishing *Joseph* from this case is the lower risk of HIV transmission from females to males.

[3] We do not conclude that the evidence is factually insufficient merely because an expert witness testified that the risk of HIV transmission was remote.  *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) ("[E]xpert testimony does not trigger a conclusive presumption of correctness . . . .").  We reach our conclusion after a de novo review of the entire record – that is, the particular facts and circumstances of this case.

In particular, we conclude that the military judge would have given the same sentence to appellant.

## CONCLUSION

Upon consideration of the entire record, we affirm only so much of Specification 3 of re-numbered Additional Charge IV as provides:

> In that [appellant], U.S. Army, did, at or near Fort Bliss, Texas, on divers occasions, between on or about 1 June 2011 and on or about 30 August 2011, commit an assault upon PFC PM, by engaging in sexual acts and sexual contact with the said PFC PM, while knowingly infected with HIV, to wit: knowingly exposing the said PFC PM to HIV.

The remaining findings of guilty are affirmed. The sentence is affirmed. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

MARTIN, Judge, concurring in part, dissenting in part.

I concur with the court's decision regarding the findings. Furthermore, I agree that under the principles announced in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we should reassess the sentence at our level. However, I disagree with the court's reassessment. The military judge found appellant guilty, *inter alia*, of assault with a means likely to cause death or grievous bodily harm to PFC PM. This court has lessened appellant's culpability to a battery for that specification. I acknowledge that the aggravation evidence has not changed. I also accept that the military judge might reasonably have given the same sentence but for the error. However, it is an altogether different question whether I am convinced the sentence would have been at least of a certain magnitude. I am not.

Under *United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986), we must be convinced "that even if no error had occurred at trial, the accused's sentence would have been at least of a certain magnitude." I would only approve only so much of the sentence as extends to a bad-conduct discharge and thirty-three months confinement. Accordingly, I respectfully dissent regarding that portion of the court's decision.



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court